IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACOB P. PITTS, #M332985, )<br>a/k/a JACKIE PITTS, )<br>　　　　　　　　　　　　　　　　　　　　　)<br>　　　　　　Plaintiff, )<br>　　vs. )<br>　　　　　　　　　　　　　　　　　　　　　)<br>LATOYA HUGHES, )<br>ANTHONY WILLS, )<br>JOHN DOE #1 (Classification/Housing )<br>Assignment Supervisor), )<br>JOHN DOE #2 (Mental Health Provider), )<br>and JOHN DOE #3 (Psychiatrist), )<br>　　　　　　　　　　　　　　　　　　　　　)<br>　　　　　　Defendants. ) | Case No. 24-cv-00028-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jacob (Jackie) Pitts, a transgender inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of her constitutional rights. Pitts claims she was sexually assaulted by her cellmate after her protective custody request was denied, and that she has been deprived gender affirming healthcare. (Doc. 10).[1] She seeks declaratory and injunctive relief and monetary damages. *Id.* On January 24, 2024, Pitts filed a Motion for Temporary Restraining Order and Preliminary Injunction, seeking an order requiring Defendants to provide her with gender affirming healthcare and to ensure her placement in safe housing separate from the inmate who sexually assaulted her (Doc. 13).[2]

The First Amended Complaint is now before the Court for preliminary review under

---

[1] Pitts filed her First Amended Complaint (Doc. 10) before the Court reviewed her original Complaint (Doc. 1).
[2] On January 31, 2024, Pitts filed additional documents in support of her First Amended Complaint and Motion (Docs. 14, 15).

1

28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The First Amended Complaint

Pitts makes the following allegations in the First Amended Complaint: Pitts was transferred to Menard Correctional Center on May 5, 2023 (Doc. 10, p. 5). She submitted an emergency grievance on May 7, 2023 to Defendant Wills (Menard Warden) to inform him she identifies as a transgender woman.[3]

From May 2023 through October 2023, Pitts participated in mental health consultations with John Doe #2 (Mental Health Provider)[4] and John Doe #3 (Psychiatrist),[5] during which she informed them that she openly identifies as a Black, Jewish, transgender woman, and is seeking gender affirming healthcare including medications and surgeries. However, John Does #2 and #3 failed to notify the appropriate officials of Pitts' transgender status so her identity could be recorded on her ID card and so she could be provided with gender affirming hormones or other treatment (Doc. 10, p. 9). This omission was intentional because Pitts' physical appearance is masculine and because these providers are biased against her.

Pitts filed a grievance on June 12, 2023 seeking transgender healthcare, reclassification, and for her ID to reflect her transgender status (Grievance No. 323-6-23). Wills denied relief.

---

[3] This grievance, No. 238-5-23, was deemed an emergency for expedited review by Warden/CAO Wills (Doc. 14, pp. 1-2, 6). Pitts is a member of the plaintiff class in *Monroe v. Bowman*, Case No. 18-cv-156-NJR, which consists of all prisoners in the custody of IDOC who have requested evaluation or treatment for gender dysphoria. *See* Doc. 213 in *Monroe*; Doc. 10, pp. 19-22 herein. Injunctive relief has been ordered in that case which includes access to gender affirming health care for class members (see Docs. 384, 678, 679 in Case No. 18-cv-156-NJR).
[4] Pitts notes that John Doe #2 may be named "Wilks" who saw her from May through October 2023. (Doc. 10, p. 3).
[5] Pitts notes that John Doe #3 is a psychiatrist holding a Ph.D., possibly named "Wiedle," who saw her from May through October 2023 (Doc. 10, p. 3).

2

Pitts' appeal of that denial has been pending for over seven months (Doc. 14, pp. 2, 9-11). Pitts has filed additional grievances on the same matter to no avail (Doc. 14, p. 2).

Pitts was told when she arrived at Menard that she would have to wait six months to receive hormone treatment. More than eight months later she has had none (Doc. 10, p. 21). Pitts wrote to Defendants Hughes (Acting IDOC Director) and Wills on December 5, 2023, to notify them she had been denied gender affirming healthcare (Doc. 10, p. 8).

Pitts was housed in Menard's East Wing (EH-04-06) with a convicted sex offender in June and July 2023. From November 16, 2023 to November 30, 2023, Pitts was housed in EH-05-14 with a parole violator charged with a sex offense. These cellmates subjected Pitts to unwanted sexual advances, and she filed an emergency grievance and PREA[6] complaint against them.

On November 30, 2023, Pitts requested placement in Protective Custody ("PC") because other prisoners had threatened to rape and kill her because of her racial, religious,[7] and transgender identity, and former membership in a Security Threat Group (Doc. 10, pp. 5, 16). Pitts was interviewed by a Menard Clinical Services staff member and an Internal Affairs staff member regarding her PC request. Defendant Wills denied Pitts' PC request on December 11, 2023, and she appealed to Defendant Hughes.

While her PC request was pending, Pitts had been housed in a single cell (RC-01-38) from November 30, 2023 through December 19, 2023, where she had access to a private shower. On December 19, 2023, John Doe #1 moved Pitts to a cell with Inmate Anderson (cell WH-05-01), a white male prisoner who openly identifies as a Nazi and nationalist; he has tattoos including nazi white supremacist phrases, swastikas, and the word "Nationalist" on his body. Hughes, Wills, and

---

[6] Prison Rape Elimination Act. Wills deemed Pitts' PREA complaint an emergency, but ultimately denied it (Doc. 14, p. 2).
[7] Pitts notes that she wears a yarmulke at all times.

3

John Doe #1 (the Classification and Housing Assignment Supervisor who placed Pitt and Anderson together) were aware of these facts.

On December 22, 2023, Pitts, her cellmate Anderson (who had also requested PC), and other inmates participated in remote hearings to consider the appeals of their denied PC placement requests. That day, Pitts learned that Hughes denied her PC appeal (Doc. 10, pp. 6-7). However, Anderson's PC placement was granted. Despite that decision, neither Pitts nor Anderson was moved from their shared cell.

On December 25, 2023, Anderson sexually assaulted Pitts; he forced Pitts to masturbate him and to penetrate her own anus with a deodorant bottle, threatening to kill her if she refused. Anderson covered Pitts' hand with his own to force the object in and out of Pitts' anus, causing her physical injury and extreme emotional distress. Pitts was removed from the shared cell on December 29, 2023 and immediately lodged a PREA complaint/grievance (Doc. 10, p. 8). Pitts requested to be kept separate from Anderson ("KSF") (Doc. 14, pp. 3, 15-16). On January 11, 2024, Wills deemed the grievance an emergency, but no KSF relief had been granted as of January 31, 2024 (Doc. 14, p. 3).

Pitts renewed her PC placement request, which Wills again denied on January 25, 2024. Her appeal is pending (Doc. 14, pp. 3, 14). In the absence of PC or KSF approval, Pitts would again be housed in the same area as Anderson and could again be placed in a cell with him. *Id.*

Pitts was denied access to a private shower May 5, 2023 through November 30, 2023, and December 19, 2023 through December 29, 2023.[8] To avoid taking communal showers with male inmates, many of whom are sex offenders, Pitts did not shower during those times and developed disfiguring skin ailments (Doc. 10, p. 8).

---

[8] IDOC officials were ordered in *Monroe v. Bowman*, Case No. 18-cv-156-NJR (S.D. Ill.) (Docs. 384, 678, 679) to provide all class members with access to private showers.

Pitts asserts all Defendants' actions and omissions amounted to retaliation against her for exercising her constitutional rights (Doc. 10, p. 9).

Based on the allegations in the First Amended Complaint, the Court designates the following claims in this *pro se* action:

Count 1:   Eighth Amendment deliberate indifference to serious medical/mental health needs claim against Hughes, Wills, John Doe #2, and John Doe #3 for denying Pitts access to gender affirming healthcare and access to a private shower.

Count 2:   Eighth Amendment deliberate indifference claim against John Doe #1, Hughes, and Wills for housing Pitts with Anderson on December 19, 2023, despite knowing that Anderson was a nazi white supremacist and that Pitts identifies as a Black, Jewish transgender woman.

Count 3:   Eighth Amendment claim against Wills and Hughes for failing to protect Pitts from Anderson's December 25, 2023 sexual assault, despite Pitts' request to be placed in protective custody.

Count 4:   First Amendment retaliation claim against Hughes, Wills, John Doe #1, John Doe #2, and John Doe #3 for denying Pitts gender affirming healthcare and safe housing because Pitts exercised her constitutional rights.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[9]

## Discussion

### Count 1

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). Pitts asserts that she is a transgender

---

[9] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

woman and that she has been denied gender affirming care. Gender dysphoria is a serious medical condition with mental health components. *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019). Therefore, Pitts' allegations are sufficient for Count 1 to proceed against Hughes, Wills, John Doe #2, and John Doe #3. However, Pitts must identify the unknown defendants by name before they can be notified and respond to this claim.

### Count 2

Pitts asserts that John Doe #1, Wills, and Hughes knew about her transgender, religious, and racial identity, yet placed her with Anderson, whose known Nazi and white supremacist associations indicated he would be hostile toward Pitts and that she suffered a sexual assault as a result of this housing placement. These allegations suggest that John Doe #1, Wills, and Hughes may have been deliberately indifferent to Pitts' safety. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Therefore, Count 2 may proceed against John Doe #1, Wills, and Hughes.

### Count 3

Pitts alleges that she requested protective custody placement on November 30, 2023, based on threats she received from various inmates on account of her open identification as Black, Jewish, and transgender, as well as denial of food by an inmate trustee. She also alleges that when Wills denied her PC request, she was moved from the single cell where she was placed upon requesting PC, to the cell with Anderson. Hughes affirmed Pitts' PC denial, and three days later, Anderson sexually assaulted Pitts.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833-34 (internal citations omitted); *see also Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001) (defendant had to know that there was a substantial risk that those who attacked plaintiff would do so, yet failed to take any action). Pitt's

PC request arguably put Wills and Hughes on notice that she was vulnerable to attack. And both Defendants allegedly denied Pitts' request for protection. Count 3 may therefore proceed against Wills and Hughes.

### Count 4

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Pitts does not include facts that suggest one or more defendants retaliated against her. She does not describe the grievances, complaints, or other constitutionally protected actions she took that triggered the alleged retaliation. Her general assertions are not sufficient to support a retaliation claim. Therefore, Count 4 will be dismissed without prejudice.

### Unknown/John/Jane Doe Defendants

Pitts is responsible for securing information aimed at identifying the Unknown/John Doe Defendants, in accordance with the John/Jane Doe Identification Order that will be entered separately. Once the names of the unknown defendants are obtained, Pitts must file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Complaint. Defendant Wills, in his official capacity as Warden of Menard Correctional Center, will respond to Pitts' requests for information regarding the identity of the Unknown Defendants.

**Motion for Temporary Restraining order and Preliminary Injunction (Doc. 13)**

Pitts again alleges that she was sexually assaulted and has been denied gender affirming healthcare for her serious medical and mental health condition (Doc. 13). She asserts that she is at risk of serious physical harm or death because she is still housed near her assailant Anderson, who has threatened to kill her, and could have contact with him (Doc. 13, pp. 3, 7-9). Pitts requests to be housed in a safe location separate from Anderson and to be given gender affirming healthcare.

Pitts' motion for TRO is **DENIED**. A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).

Pitts' request for a TRO does not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*.

The Court **DEFERS** a decision on Pitts' Motion for Preliminary Injunction until Defendants have had an opportunity to respond and the Court has conducted a hearing on the motion. The hearing will be set by separate Order. **Defendants Hughes and Wills are ORDERED to respond to the Motion, in writing, no later than seven (7) days prior to the hearing.**

**Disposition**

The Complaint states colorable claims in Count 1 against Latoya Hughes, Anthony Wills, and John Does #2 and #3; in Count 2 against Hughes, Wills, and John Doe #1; and in Count 3 against Wills and Hughes. Count 4 is **DISMISSED** without prejudice.

The Clerk shall prepare for Latoya Hughes and Anthony Wills: (1) Form 5 (Notice of a

8

Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, a copy of the Motion for TRO/Preliminary Injunction (Doc. 13), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against her and the judgment includes the payment of costs under 28 U.S.C. §1915, she will be required to pay the full amount of the costs, even though her application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in address; the Court will not independently

investigate her whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: February 16, 2024**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.