## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JACOB P. PITTS, #M32985, a/k/a JACKIE PITTS, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 24-cv-00028-RJD |
| v. | ) ) | |
| LATOYA HUGHES, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## ORDER

**DALY, Magistrate Judge:**[1]

Before the Court is Defendants' Motion for Summary Judgment on the Issue of Administrative Exhaustion (Doc. 99), which is hereby **GRANTED in part and DENIED in part**.

### Background

Plaintiff Jacob (Jackie) Pitts, a transgender inmate of the Illinois Department of Corrections ("IDOC"), brought this action on January 3, 2024, under 42 U.S.C. § 1983, alleging deprivation of her constitutional rights while incarcerated at Menard Correctional Center ("Menard").[2] She claimed she was sexually assaulted by her cellmate after her protective custody request was denied and that she had been deprived of gender-affirming healthcare. Doc. 1. Plaintiff filed an Amended Complaint on January 10, 2024, making substantially the same allegations. Doc. 10.

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). Doc. 76.

[2] Plaintiff is no longer incarcerated at Menard. Based on her Notice of Change of Address (Doc. 90) and the IDOC website, she was released on parole as of September 26, 2024. *See* Individual in Custody Search.

After threshold review of the Amended Complaint under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on the following claims:

Count 1:    Eighth Amendment deliberate indifference to serious medical/mental health needs claim against Hughes, Wills, Fromm, and Wilkes for denying Pitts access to gender-affirming healthcare and access to a private shower.[3]

Count 2:    Eighth Amendment deliberate indifference claim against Wingerter, Hughes, and Wills for housing Pitts with Anderson on December 19, 2023, despite knowing that Anderson was a nazi white supremacist and that Pitts identifies as a Black, Jewish transgender woman.

Count 3:    Eighth Amendment claim against Wills and Hughes for failing to protect Pitts from Anderson's December 25, 2023, sexual assault, despite Pitts' request to be placed in protective custody.

(Doc. 16).

On February 11, 2025, Defendants filed their Motion for Summary Judgment on the Issue of Administrative Exhaustion.   Doc. 99.   On April 9, 2025, the Court granted Plaintiff an extension of time up to April 25, 2025, to respond to the motion.   Doc. 106.   To date, Plaintiff has not responded.

## Analysis

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).   The movant bears the initial burden of demonstrating the lack of any genuine issue of material fact.

---

[3] Tera Wilkes was substituted for Defendant John Doe #2, and Leigh Fromm was substituted for Defendant John Doe #3.   Docs. 54, 57, & 75.   Terri Wingerter was substituted for Defendant John Doe #1.   Docs. 54 & 60.

*Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).   In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).   While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, "the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust."   *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Roberts v. Neal, 745 F. 3d 232,* 236 (7th Cir. 2014).

***Exhaustion Requirement***

Under the Prison Litigation Reform Act ("PLRA"), prisoners are required to exhaust available administrative remedies before filing lawsuits in federal court.   42 U.S.C. § 1997e(a). To comply with the PLRA exhaustion requirement, an inmate must follow the prison's grievance process.   *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citation omitted).   The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler,* 438 F.3d 804, 808 (7th Cir. 2006).   Thus, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies."   *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).   "[A] suit filed by a prisoner before administrative remedies

have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on

the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v.*

*Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).   However, "all dismissals under §

1997e(a) should be without prejudice."  *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a

written grievance within 60 days after the discovery of the incident, occurrence, or problem to his

or her institutional counselor unless certain discrete issues are being grieved.   20 Ill. Admin. Code

§ 504.810(a).   If the complaint is not resolved through a counselor, the grievance is considered by

a Grievance Officer who must render a written recommendation to the CAO—usually the

Warden—within two months of receipt, "when reasonably feasible under the circumstances."  *Id*.

§504.830(e).   The CAO then advises the inmate of a decision on the grievance.   *Id.*

An inmate may appeal the decision of the CAO in writing within 30 days to the ARB for a

final decision.   *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006).

The ARB will submit a written report of its findings and recommendations to the Director, who

shall review the same and make a final determination within six months of receipt of the appeal.

*Id.* § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it

directly to the CAO.  *Id.* § 504.840.   If it is determined that there exists a substantial risk of

imminent personal injury or other serious or irreparable harm, the grievance is handled on an

emergency basis, which allows for expedited processing of the grievance by responding directly

to the offender.  *Id.*

Finally, the grievance procedures allow for certain issues, including decisions

regarding protective custody placement, to be submitted directly to the ARB.  *Id.* § 504.870.   An

inmate who intends to grieve the CAO's denial of a protective custody request "must indicate his

intent to do so in writing at the time he is served with" the CAO's decision.  *Id.* § 501.320.

To satisfy its purpose and comply with the PLRA requirements, the grievance must contain

sufficient information to allow prison officials "time and opportunity to address complaints

internally before allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S. 516, 525,

122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002); *see also Brown v. Briggs*, No. 22-1963, 2023 WL

3674669, at *2 (7th Cir. May 26, 2023) ("the grievance must raise the same claim as the lawsuit

and provide enough information to indicate that the defendant is the target").   But the Seventh

Circuit has explained that not naming the defendants in a grievance is "a mere technical defect"

where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair

opportunity to respond.  *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

At the same time, inmates are only required to exhaust those administrative remedies that

are available to them.  *Dole*, 438 F.3d at 809.   The Supreme Court has explained that

administrative remedies are unavailable, for instance, when the administrative process "operates

as a simple dead end—with officers unable or consistently unwilling to provide any relief to

aggrieved inmates."  *Ross v. Blake*, 578 U.S. 632, 639–40, 136 S.Ct. 1850, 195 L.Ed.2d 117

(2016).   Thus, no exhaustion is required when a prison unreasonably delays or fails to respond to

a properly filed grievance.  *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002).   It is the

defendant's burden to show "beyond dispute" that the administrative "remedies were

available."  *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018).

## Discussion

As a preliminary matter, the Court notes that Plaintiff did not respond to Defendants' motion for summary judgment despite being notified of the consequences of such failure and the Court granting her an extension of time to do so.   Docs. 100 & 106.   Under Rule 56, when an opposing party fails to properly address the movant's statement of facts by citing specific parts of the record, the court may consider those facts undisputed.   Fed. R. Civ. P. 56(c) & (e).   The court can also award "summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."   Fed. R. Civ. P. 56(e).   The Court may, but is not required to, consider non-cited materials.   Fed. R. Civ. P. 56(c)(3).   Here, Defendants' motion includes a statement of Undisputed Material Facts with proper citation to the record.   Doc. 99, pp. 2-5.   Accordingly, Defendants' factual allegations in their statement of Undisputed Material Facts are being deemed admitted.   Based on the record, the Court finds that Defendant Hughes is entitled to summary judgment on Count 1.   Defendants' motion for summary judgment is **DENIED** on Counts 2 and 3 as well as on Plaintiff's claim against Defendant Wills in Count 1.

The record contains five relevant grievances that Plaintiff filed prior to initiating this action.   The Court will address each grievance in order.

*a.  Emergency Grievance #238-5-23*

Plaintiff filed Grievance #238-5-23, dated May 7, 2023, and marked it an emergency. Doc. 99-1, pp. 28-29.   She grieved that she was forced to shower with men despite identifying as a woman and sought mental health treatment for her transgender status.   *Id.*   The Warden deemed the grievance an emergency on May 16, 2023.   *Id.* at 27.   On May 18, 2023, the Grievance

Officer recommended that the grievance be denied as moot, and the Warden concurred on May 24, 2023. *Id.* Plaintiff signed the appeal box on May 31, 2023, but the ARB did not receive the grievance until June 28, 2023. *Id.* at 26-27. On July 5, 2023, the ARB denied the grievance for being filed more than 30 days after the CAO's decision. *Id.* at 27.

Defendants argue that Grievance #238-5-23 did not exhaust Plaintiff's administrative remedies because the ARB received Plaintiff's appeal 35 days after the CAO's decision in contravention of Section 504.850(a) of the Illinois Administrative Code. 20 Ill. Admin. Code § 504.850(a). This Court has found that short delays in the exhaustion process are generally insufficient, without other proof or evidence, to demonstrate that an inmate has not exhausted administrative remedies. *Mohammad v. Lashbrook*, No. 19-CV-756-RJD, 2022 WL 408112, at *6 (S.D. Ill. Feb. 10, 2022) (citing *Smith v. Brookhart, et al.*, Case No. 3:20-cv-830, 2022 WL 306837, at * 7 (S.D. Ill. Feb. 2, 2022) (six-day delay in receipt of grievance by ARB did not make grievance untimely)). Other courts in this district have also found that a grievance will be timely appealed with the ARB so long as an inmate placed it in the prison's mail system within the 30-day timeframe. *See Chapman v. Wexford Health Servs.*, No. 22-CV-1942-SMY, 2025 WL 578504, at *4 (S.D. Ill. Feb. 21, 2025) (collecting relevant case law and noting that "[w]hile the administrative code does specify that an inmate's appeal must be received by the ARB within 30 days of the CAO's decision, federal courts generally apply the 'prison mailbox rule' to determine whether an inmate has met a filing deadline").

Here, the record shows that Plaintiff signed the appeal box on May 31, 2023, but the ARB did not receive the grievance until June 28, 2023. In her verified Amended Complaint, Plaintiff alleged that prison staff failed to timely process her mail containing the appeal of

Grievance #238-5-23 to the ARB, resulting in the ARB denying the grievance as untimely.   Doc.
10, ¶18.   Defendants failed to offer any evidence that Plaintiff did not mail her grievance within
the 30-day timeframe, or that the delay in receipt by the ARB was attributable to Plaintiff.   Thus,
without some evidence from Defendant to dispute Plaintiff's contention that the five-day delay
was not attributable to her fault, the Court finds there is nothing else Plaintiff could do to exhaust
this grievance.

Defendants next argue that Grievance #238-5-23 is also substantively deficient.   The
Court agrees.   First, Grievance #238-5-23 is unrelated to Counts 2 and 3 of the Complaint, as this
grievance was filed on May 17, 2023, while the allegations in those counts postdate the grievance
and relate to events that occurred in December 2023.   Docs. 99-1, p. 29-30; Doc.16, p. 5.   Turning
to Count 1, Plaintiff's claim of deliberate indifference to her gender dysphoria is based on two
grounds.   First, Plaintiff alleges that Defendants Fromm and Wilkes intentionally failed to notify
the appropriate officials of her transgender status so her identity could be recorded on her ID card
and she could be provided with gender affirming hormones or other treatment.   Doc. 16, p. 2.
While Grievance #238-5-23 covers those allegations, Defendants Fromm and Wilkes have
withdrawn their affirmative defense of exhaustion of administrative remedies.   Doc. 94.   Plaintiff
also claims that Defendants Wills and Hughes denied her transgender healthcare in June and
December 2023.   Doc. 16, p. 3.   Because the allegations against Defendants Wills and Hughes
postdate Grievance #238-5-23, the grievance could not have served its purpose of providing the
facility with an opportunity to address Plaintiff's claims against them.   Accordingly, Grievance
#238-5-23 did not serve to exhaust any of Plaintiff's claims against Defendants Wills, Hughes,
and Wingerter.

b.  *Grievance #323-6-23*

Plaintiff filed Grievance #323-6-23, dated June 12, 2023, concerning an alleged denial of

gender affirming care and an improper ID card that failed to state her transgender status.   Doc.

99-2, pp. 4-5.   The CAO did not deem it an emergency.   *Id.* at 4.   The Counselor responded on

August 8, 2023, stating that Plaintiff "scored maximum security due to disciplinary" and that she

would "remain on ID for 3 years."   *Id.* at 4.   The Counselor further attached a Memorandum by

the Health Care Unit, dated August 7, 2023, noting that Plaintiff had been referred to the psych

NP to begin hormone therapy.   *Id.* at 5-6.   The Grievance Officer received the grievance on

August 16, 2023, and five months later, on January 3, 2024, recommended that it be denied.   *Id.*

The Grievance Officer's response substantially restated the Counselor's decision at the initial

review step.   The CAO concurred on January 23, 2024.   *Id.*   Plaintiff signed the appeal box on

February 1, 2024.   *Id.*   The ARB received the grievance on February 5, 2024, and denied it on

March 5, 2024, because the issue was appropriately addressed by the facility.   *Id.* at 1.

Defendants argue that Plaintiff did not fully exhaust Grievance #323-6-23 prior to initiating

this action on January 3, 2024, because the grievance had not yet been submitted to the ARB.   In

prior filings, however, Plaintiff insinuated that the grievance process was rendered unavailable

because Grievance #323-6-23 had been pending for approximately 8 months, and Plaintiff doubted

she would ever receive any response or remedy.   Doc. 14, pp. 2, 4.   Based on the regulation, the

Grievance Officer must render a written recommendation to the CAO within two months of receipt

of the grievance, "when reasonably feasible under the circumstances."   20 Ill. Admin. Code

§504.830(e).   While this "is not an absolute deadline . . . a response to a grievance should fall

within the ballpark" unless the claim presents complexities requiring prolonged investigation.

Page **9** of **16**

*Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137, at *2-3 (N.D. Ill. July 2, 2001) (internal quotation marks omitted); *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004) ("Some appeals are simple and will be wrapped up within two months; others are more complex. This was one of the more complex ones, which is why the Administrative Review Board wanted to take Ford's live testimony.").

      Here, Defendants did not address in their motion why the administrative procedure was not rendered unavailable to Plaintiff despite the Grievance Officer's failure to respond to Grievance #323-6-23 for approximately five months.  It is striking that the Grievance Officer's response came the very day Plaintiff filed the Complaint.   Even more striking, however, is that the response substantially restated the Counselor's decision at the first level of review.   In short, nothing in the record suggests that the Grievance Officer's delayed response was justified by the need to conduct further investigation or for any other reason.  *See Vargas v. Wexford Health Sources, Inc.*, No. 18-CV-06068, 2024 WL 1376369, at *7 (N.D. Ill. Mar. 31, 2024) (holding that the administrative remedies were rendered unavailable when the grievance officer failed to respond to a grievance for seven months and nothing in the record indicated that the investigation in the grievance required "an inordinate length of time to complete").  Furthermore, there is no indication that Plaintiff had reason to believe the Grievance Office was still reviewing her grievance five months after its submission for a second-step review.  Therefore, the Court finds that the Defendants failed to satisfy their burden of showing that administrative remedies remained available to Plaintiff despite the nearly five-month delay in the Grievance Officer's response to Grievance #323-6-23.

      The Court, however, still needs to examine whether Grievance #323-6-23 contained

sufficient information to allow the institution to address Plaintiff's claims prior to filing this action. As with the prior grievance, Grievance #323-6-23 predates the events alleged in Counts 2 and 3 of the Amended Complaint and is silent on Plaintiff's alleged assault by Anderson in December 2023. However, the grievance fully addresses Plaintiff's allegations in Count 1 of the Amended Complaint regarding Defendant Wills' failure to provide her with gender-affirming healthcare despite becoming aware of Plaintiff's transgender status through her prior grievances in May 2023. Doc. 99-2, p. 4.   The Court cannot say the same as to Plaintiff's deliberate indifference to her gender dysphoria diagnosis against Hughes.   Plaintiff's Amended Complaint alleges that Hughes became aware of Plaintiff's transgender status on December 5, 2023, when Plaintiff wrote to her to notify her that she was being denied gender affirming healthcare at Menard.   Doc. 16, p. 2; Doc. 10, p. 8.   Plaintiff drafted Grievance #323-6-23 on June 12, 2023, several months before she allegedly sent the letter to Hughes.   The grievance contains no reference to Defendant Hughes either by name or by description of the allegations against her.   Accordingly, Grievance #323-6-23 is substantively deficient as to Plaintiff's deliberate indifference claim against Defendant Hughes. *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021) (citing *Ross*, 578 U.S. 632) ("federal courts lack discretion to consider a claim that has not traveled the required administrative path").

Accordingly, the Court finds that Grievance #323-6-23 exhausted Plaintiff's administrative remedies for Count 1 of the Amended Complaint against Defendants Wills only.   It did not, however, exhaust Plaintiff's claim in Count 1 against Defendant Hughes and Plaintiff's claims in Counts 2 and 3 of the Amended Complaint.

*c. Emergency Grievance #K4-1223-2098*

Plaintiff filed Grievance #4-1223-2098, dated December 12, 2023, and marked as an emergency. Doc. 99-1, pp. 14-15. Plaintiff grieved sexual harassment by individuals Dye and Ledbetter and the denial of gender-affirming care at Menard Correctional Center by the "Menard C.C. Administration." *Id.* at 14-15. On December 15, 2023, the CAO sent the grievance for expedited emergency review. *Id.* at 14. On the same day, the Grievance Officer forwarded it to the PREA Compliance Manager and Internal Affairs for review. *Id.* On December 29, 2023, the Grievance Officer recommended that the grievance be denied because the PREA allegations were not substantiated, and Plaintiff was appropriately placed at that time. *Id.* The CAO concurred on that same day. *Id.* The ARB received Grievance #K4-1223-2098 on January 8, 2024, and provided a response to Plaintiff on January 24, 2024, denying it on its merits. *Id.* at 11.

As Defendants correctly point out, Grievance #K4-1223-2098 did not exhaust Plaintiff's administrative remedies because it was not fully exhausted until January 24, 2024, twenty-one days after Plaintiff initiated this action, and eight days after she filed the Amended Complaint. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Accordingly, Grievance #K4-1223-2098 did not exhaust Plaintiff's administrative remedies as to any of the claims raised in this action.

*d. Grievance of Protective Custody Denial*

On November 29, 2023, Plaintiff requested to be placed in protective custody. Doc. 91-1, p. 25. In her request, she indicated that she identifies as black, Jewish, lesbian, transgender

woman, and that her identity as such "has caused STG prisoners to threaten [her] life," and that other prisoners, whom she could not identify aside from visual identification, threatened to rape her.  *Id*.  Plaintiff's request was denied on December 11, 2023, due to the alleged threats being unsubstantiated.  *Id.*  On December 12, 2023, Plaintiff signed the box indicating her intent to appeal the denial of the protective custody request.  *Id.*  The ARB received Plaintiff's appeal and conducted a hearing on December 22, 2023.  *Id.* at 21.  The ARB denied the grievance on December 22, 2023.  *Id.* at 21.  On December 25, 2023, Plaintiff was allegedly sexually assaulted by Anderson, with whom Plaintiff had been housed since December 19, 2023.

Defendants Wingerter, Wills, and Hughes concede that Plaintiff followed all procedural steps to exhaust her protective custody request, but they challenge that the request was substantively sufficient to exhaust Plaintiff's claims against them.[4]  Doc. 99, p. 11.  Plaintiff's protective custody request does not touch upon Plaintiff's allegations of denied gender-affirming treatment or being required to share a shower with men as asserted in Count 1 of the Amended Complaint.  Therefore, it is insufficient to exhaust Plaintiff's deliberate indifference claim raised therein.  That's not, however, the case as to Counts 2 and 3.

In Count 2, Plaintiff asserts that Defendants Wingerter, Wills, and Hughes were deliberately indifferent to Plaintiff's serious risk of harm when they placed her with Anderson on December 19, 2023, despite knowing Plaintiff's transgender, religious, and racial identity and that

---

[4]  An inmate who intends to grieve the denial of protective custody "must indicate his intent to do so in writing at the time he is served with the Chief Administrative Officer's decision." 20 Ill. Admin. Code § 501.320(d).  The CAO "shall notify the Administrative Review Board who will review the grievance and provide recommendations to the Director within 30 working days of its receipt, whenever possible. The Director shall make the final determination." *Id.*  Further, the protective custody status form which notified Plaintiff of the CAO's denial of his protective custody request provided that Plaintiff could immediately grieve the decision to the ARB by indicating so in the relevant box within the form.  Doc. 99-1, p. 25.  Plaintiff signed the relevant box on December 12, 2023.  *Id.*

Anderson had Nazi and white supremacist associations.   Doc. 16, p. 6.   As a result of that housing placement, Anderson allegedly sexually assaulted Plaintiff on December 25, 2023.   *Id.*   In Count 3, Plaintiff raises a deliberate indifference claim that focuses on Defendants Wills and Hughes' denial of Plaintiff's protective custody request despite knowing that Plaintiff was receiving threats by various inmates on account of her open identification as Black, Jewish, and transgender.   Doc. 16, pp. 6-7.   When Wills denied Plaintiff's protective custody request, Defendant Wingerter moved her to the cell with Anderson, who sexually assaulted her three days later.   *Id.*

Plaintiff's allegations in Count 3 are identical to Plaintiff's request for protective custody and the appeal thereto.   In both, Plaintiff complained about a serious risk of harm resulting from the denial of protective custody despite the threats Plaintiff was receiving because of her transgender, religious, and racial identity.   See Doc. 16, p. 3; Doc. 99-1, p. 20.   Likewise, there is no qualitative distinction between Plaintiff's claim in Count 2 of the Amended Complaint and her denied request for protective custody.   In Count 2, Plaintiff argues that Defendants Wingerter, Wills, and Hughes knew about her transgender, religious, and racial identity, yet ordered that she be housed with Anderson, whose known Nazi and white supremacist associations indicated he would be hostile toward Pitts.   The gist of both claims is the failure to protect Plaintiff from the ongoing threats of prospective harm to her health and safety resulting from her transgender, religious, and racial identity.

Defendants argue that the denied protective custody request did not exhaust Plaintiff's claims in Counts 2 and 3 because Plaintiff failed to specifically identify Anderson as a threat in her appeal.   This is immaterial.   To serve its purpose, the grievance needed to provide the institution with an opportunity to address Plaintiff's claim of ongoing threats to her health and

safety.   It did so.   Plaintiff was not required to resubmit multiple grievances for each inmate who posed such a threat.   *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (holding that if an inmate is suffering due to an ongoing prison condition, he "need not file multiple, successive grievances raising the same issue").   Defendants finally note that the request for protective custody was silent on housing placement and therefore did not exhaust Plaintiff's administrative remedies against Wingerter.   However, the denial of protective custody despite ongoing threats of harm by other inmates due to Plaintiff's transgender, religious, and racial identity and the housing in a unit where Plaintiff faced those exact threats are just different sides of the same coin. Accordingly, the Court finds that Plaintiff fully exhausted her administrative remedies as to Counts 2 and 3 of the Amended Complaint.

*e.   Grievance #K4-0124-0151*

Plaintiff also filed Grievance #K4-0124-0151, which was submitted on December 29, 2023.   Doc. 10, p. 8; Doc. 14, pp. 3, 15-16, Doc. 16, p. 4.   Therein, Plaintiff grieved her alleged assault by Anderson on December 25, 2023.   However, this grievance is procedurally defective and cannot serve to exhaust Plaintiff's claims.   Plaintiff's Amended Complaint and Court filings concede that Grievance #K4-0124-0151 was submitted on December 29, 2023, and deemed emergent at the first level of review on January 11, 2024, which is eight days after Plaintiff initiated this action.   "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."   *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).   Accordingly, Grievance #K4-0124-0151 did not serve to exhaust Plaintiff's administrative remedies as to any of the claims raised in this action.

Page **15** of **16**

<u>**Conclusion**</u>

For the reasons set forth above, Defendants' Motion for Summary Judgment on the Issue of Administrative Exhaustion (Doc. 99) is **GRANTED in part and DENIED in part**.   Plaintiff survives summary judgment as to Count 1 against Defendant Wills as well as Counts 2 and 3. Plaintiff's claim against Defendant Hughes in Count 1 of the Amended Complaint is **DISMISSED without prejudice**.   The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of the case.


**IT IS SO ORDERED**.

**DATED: September 5, 2025**

s/ *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**